UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01783-WYD

SANDRA PROCTOR,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

_____

**ORDER**

_____

I.     <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for disability insurance benefits under the Social Security

Act ["the Act"].  For the reasons stated below, this case is reversed and remanded for

further factfinding.

II.     <u>FACTUAL BACKGROUND</u>

Plaintiff filed an application for benefits in July 2004 claiming that she became

unable to work as of June 17, 2004.  (Administrative Record ["R."] 85-96.)  Plaintiff was

born in September 1949 (*id.* at 93) and completed three (3) years of college.  (*Id.* 118.)

She worked in the past as a cashier, convenience store manager, and cook.  (*Id.* 112-

13, 125-38.)  Plaintiff alleged that she became disabled when she was 54 years old

because of back problems, two corneal transplants in 1990, high blood pressure and

diabetes.  (*Id.* 93, 111.)

Plaintiff's application was denied in March 2005. (R. 63-66.) She then requested a hearing before an Administrative Law Judge ["ALJ"], which hearing was held on September 7, 2008. (R. 783-824.) On September 19, 2007, the ALJ issued a decision denying Plaintiff's claim. (*Id.* 28-44.)

Specifically, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2008. (R. 26, Finding 1.) He also found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (*Id.*, Finding 2.)

At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, diabetes, and obesity, but found at step three that her condition did not meet or equal the requirements of any presumptively disabling listed impairment. (R. 26-28, Findings 3 and 4). He found that Plaintiff's mental limitations, corneal transplants, high blood pressure and other impairments were not severe. (*Id.* 26-27.)

The ALJ found that Plaintiff's "statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the medical evidence and the discrepancies between the claimant's allegations and the information contained in the documentary reports." (R. 28.) He further found that Plaintiff's complaints of disabling pain were "not fully credible." (*Id.* 30.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for "light exertional work" in terms of lifting and carrying (lift and carry up to 20 pounds occasionally and 10 pounds frequently). (R. 29.) He also found that Plaintiff can:

> stand and/or walk for two to four hours in an eight-hour workday; sit for at least 6 hours in an 8-hour workday; who is unlimited in push and/or pull activities (including operation of hand and/or foot controls) other than as

> stated above for lift and carry; who can frequently reach, handle, finger, feel and push/pull bilaterally; frequently operate foot controls bilaterally; occasionally climb stairs and steps but should never be required to climb ladders or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl; occasionally reach overhead; who should not be subjected to extreme heat, extreme cold, dampness, noise, or vibration; who should not be subjected to hazards of the workplace; and needs to possess and use diabetic testing equipment and respond to those results with medication, snacks, beverage, and things of that nature.

(*Id.* 28, Finding 5).

At four, the ALJ found that Plaintiff's RFC did not preclude her from performing her past relevant work as a retail store manager and cashier. (R. 32-33, Finding 6.) The ALJ also found that Plaintiff's vocational factors did not preclude her from performing other work existing in significant numbers in the national economy, such as food checker. (*Id.*, Finding 6.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from June 17, 2004, her alleged onset date, through the date of the ALJ's decision. (*Id.* 33.)

Plaintiff presented additional medical evidence from her treating physicians to the Appeals Council. (R. 767-81.) The Appeals Council denied Plaintiff's request for review after stating that it had reviewed this additional evidence. (*Id.* 6-9.) Plaintiff timely requested judicial review, and this appeal followed. The ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

B.      Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff makes a number of arguments in asserting that the ALJ's decision is not supported by substantial evidence.  She argues that the ALJ improperly failed to apply the treating source rule, failed to identify and consider all severe medical impairments, and failed to consider her combination of impairments.  Plaintiff also argues that the ALJ improperly determined her RFC, improperly denied the claim at step four and that the ALJ did not meet his burden of proof at step five.  I address these arguments below.

1.      Whether the ALJ Improperly Failed to Apply the Treating Source Rule and Erred in Connection with the Evaluation of the Medical Evidence

I first agree with Plaintiff that the ALJ did not properly evaluate the treating source opinions and that a remand to the Commissioner is required on this basis.  An

ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).

In other words, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)). "'[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (quotation omitted). "'The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Id.* (quotation and internal quotation marks omitted). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher*, 52 F.3d at 290.

The ALJ stated in this case that in assessing Plaintiff's RFC, he relied on the findings and opinion of a nonexamining state agency physician, an "independent consultative examiner" and Plaintiff's reported activities. (R. 28.) He did not actually state the names of the providers. I infer from my reading of the report that he relied on

the opinions of Drs. Ketelhohn, Kahler and/or Wunder.  However, this is unclear, and I

find that the ALJ erred in not being explicit as to the medical providers he relied on in

assessing Plaintiff's RFC and the reasons why he relied on their opinion.  *See Moon v.*

*Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005) (remanding

the case to the Commissioner where "the ALJ never specified what he believed the

credible medical evidence to be, either for the purpose of rejecting the doctors' RFC

assessments or for the purpose of supporting his own finding" and where the court was

thus unable to determine what evidence the ALJ relied on in connection with the RFC).[1]

From the ALJ's statement, it is apparent that he did not give controlling weight to

the treating physician's findings.  Indeed, he ignored most of their findings altogether.

This is plain error.  A medical doctors's statements about Plaintiff's condition or

impairments "are specific medical findings".  *Washington v. Shalala*, 37 F.3d 1437, 1439

(10th Cir. 1994).  The ALJ errs in rejecting those opinions in the absence of conflicting

evidence.  *Id.* (finding error with the ALJ's decision to reject the opinions of treating

physicians because of the lack of "results or diagnostic tests of medical findings which

led them to their conclusion" since the finding that Plaintiff's condition deteriorates under

stress is a specific medical finding).

Dr. Nix is and has been Plaintiff treating primary care physician since at least

1994.  (R. 374.)  The record shows that Dr. Nix has treated Plaintiff for both physical

and mental impairments, including diabetes, depression, ulcers, anemia, and orthopedic

---

[1]  Citations to this and other unpublished opinions in this Order are made because I find that the
opinions have persuasive value with respect to material issues that have not been addressed in a
published opinion.

pain as both related and not related to Plaintiff's worker's compensation accident.  (*Id.* 330-376.)  Her medical records include many medical findings that were completely ignored or discounted by the ALJ.  For example, in June 2004 Dr. Nix assessed Plaintiff with back pain with permanent restrictions at her work and with depression which was "clearly not controlled."  (*Id.* 336.)

Dr. Buchanan, Plaintiff's treating ophthalmologist whose treatment of Plaintiff dates back to 2002, assessed Plaintiff as being "considerably near sighted as well as having moderate-to-considerable amount of astigmatism with her vision correcting to 20/50 in the right eye and 20/40 in the left eye."  (R. 721.)  He found that Plaintiff "would probably still be eligible for a driver's license although she is just on the border".  *Id.* The ALJ did not discuss this in connection with his assessment of Plaintiff's vision or make any determination as to how Plaintiff's near sightedness as diagnosed by Dr. Buchanan would impact her ability to work.[2]  At the very least, this suggests that the ALJ should have followed up with Dr. Buchanan to obtain clarification.  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (if the ALJ has questions about the treating physician's opinion or the medical evidence from him is inadequate to determine whether a disability exists, the ALJ is required to contact the treating physician).

Further, the ALJ also plainly erred in that he did not state what weight, if any, he gave to the treating physicians' findings and did not give any specific reasons for disregarding their opinions.  In other words, he did not follow the treating source rules,

---

[2]  There is no evidence in the record which suggests that the ability to obtain a driver's license is equivalent to being able to do substantial gainful activity on a full-time basis.

as Plaintiff correctly recognizes.  From the foregoing, it is clear that the ALJ failed to apply the correct legal standards.  "The 'failure to apply the correct legal standard[s] or to provide th[e] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'"  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).  Since the ALJ did not discuss much of the record evidence regarding the treating physicians and failed to explain what weight, if any, he gave to these physicians, the case must be remanded to allow the Commissioner to conduct the required analysis.  *See Ledford v. Barnhart*, No. 05-7111, 2006 WL 2981289 at *3 (10th Cir. Oct. 19, 2006) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003)); *see also Robinson*, 366 F.3d at 1082 ("'an ALJ must give good reasons... for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quotation and internal quotation marks omitted).

Even where an ALJ decides that a treating physicians' opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject their opinions outright.  *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004).  Instead, their opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'"  *Id.* (quotation omitted).  The ALJ erred in that he did not give any consideration to what lesser weight the treating physicians' findings should be given.  *Id.* These rules must be complied with on remand.

I now turn to the new evidence from the treating physicians provided by Plaintiff to the Appeals Council, which evidence Plaintiff relies on to argue that she should be

awarded full benefits.  The Appeals Council stated that it reviewed this evidence in connection with the appeal and found that the information did not provide a basis to overturn the ALJ's decision.  (R. 7.)  The Tenth Circuit has held that this type of statement is "an implicit determination that appellant had submitted qualifying new evidence for consideration", and the Appeals Council is required to consider this evidence.  *See Foy v. Barnhart*, No. 04-7103, 2005 WL 1526103 (10th Cir. June 29, 2005).

I also find from my independent analysis that the evidence qualified for consideration.  "Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'"  *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).  "'Whether [evidence] qualifies as new, material and chronologically relevant is a question of law  . . .'"  *Id.* (quotation omitted).  "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision."  *Id.*  "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review, it becomes part of the record in evaluating the Commissioner's denial of benefits under the substantial-evidence standard.  *Id.*

The issue, then, before me is whether the evidence qualifies as new, material and chronologically relevant.  "Evidence is new within the meaning of [20 C.F.R. § 970(b)] if it is not duplicative or cumulative.'"  Evidence is material to the determination of disability "if there is a reasonable possibility that [it] would have changed the outcome."  *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (10th

Cir. 1991). The evidence meets this standard by reasonably calling into question the disposition of the case. *See Lawson v. Chater*, No. 95-5155, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). The relevant time period "is the period 'on or before the date of the [ALJ's] hearing *decision.*'" *Chambers*, 389 F.3d at 1143 (citing 20 C.F.R. § 404.970(b)).

I now turn to the new evidence presented to the Appeals Council. Dr. Buchanan issued a letter dated September 27, 2007, which reported that Plaintiff is functionally blind except when wearing her specially designed contact lens, and that she can only wear them for a maximum of four hours. (R. 777.) He also reported that with luck and a two hour complete vision rest period, Plaintiff might be able to reinsert the lens for a second period of vision for an unspecified length of time. (*Id.*) His medical speciality is ophthalmology, and his opinion was carefully explained and supported by his previous examinations of Plaintiff.

I find that although this letter is dated seven days after the ALJ's decision, it is chronologically relevant because it pertains to information obtained from prior examinations of Plaintiff. I also find that the evidence is new, in that it is not cumulative or duplicative of other evidence in the file. Finally, I find that it is material. This is a statement by a treating specialist which, if accepted, essentially means that Plaintiff would be unable to perform substantial gainful activity. This is because Dr. Buchanan opines that Plaintiff would only be able to work, at the most, in four hour blocks of time followed by two hours of complete abstention from use of vision. However, a claimant must be able to do sustained activities in a work setting on a regular and continuing

basis, meaning eight hours a day, five days a week, or an equivalent work schedule. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

I find from this evidence that there is a reasonable probability that if the ALJ had this evidence before him, it would have changed the outcome of the decision. This evidence, if accepted as controlling, would mean that Plaintiff is disabled. Further, it would have reasonably called into question the ALJ's findings that Plaintiff's vision impairments were controlled by treatment, that Plaintiff had failed to seek regular treatment in connection with her vision, or that there was no evidence in the record that the vision impairment caused any limitations in Plaintiff's ability to do basic work-related activities. (R. 27.)

I also find that the evidence presented by Plaintiff's treating physician Dr. Nix is new, chronologically relevant, and material. Plaintiff provided Medical Source Statements of Ability to Do Work-Related Activities (both mental and physical) from her treating physician, Dr. Nix, dated October 23, 2007. (R. 767-76.) Due to the effects of the combination of Plaintiff's multiple impairments, Dr. Nix reported Plaintiff's RFC as follows:

> Mild impairments in her ability to understand and follow simple instructions, to carry out simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, supervisors or co-workers.
> Moderate impairments in her ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and to respond appropriately to usual work situations and to changes in a routine setting.
> Physically able to lift and carry only 10 pounds occasionally.
> Physically capable of standing or walking only over 30 minutes at one time and one hour total in an 8-hour day.
> Physically capable of sitting only 2 hours at one time
> Physically capable of only occasional foot controls.

Physically incapable of reading small print, newspapers, books, a computer screen, or to distinguish differences in shape and color of small objects.

(R. 768-69, 771-73.)  She also stated that it was difficult for Plaintiff to learn new tasks especially with her visual impairment.  (*Id.* 768.)

I find that this information was new in that Plaintiff's treating doctors had not provided a functional assessment such as this in the prior medical records.  I find that this information is chronologically relevant because, even though the reports are dated over a month after the hearing, the reports say that Plaintiff had these limitations as of 2004 and 2005.  *See Wilkins*, 953 F.2d at 96 ("a treating physician may properly offer a retrospective opinion on the past extent of an impairment").

I also find that this information is material.  Again, the limitations imposed by Dr. Nix would significantly restrict Plaintiff's ability to perform substantial gainful activity.  "'A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington*, 37 F.3d at 1442 (emphasis in original) (quotation omitted).  Dr. Nix's findings about Plaintiff's impairments reasonably call into question the RFC finding and the findings that Plaintiff can perform her past relevant work or other jobs.

From the foregoing, I find that the Appeals Council erred in not granting a review of this case.  These findings call into question the ALJ's decision in this case beginning at step two and continuing all the way through steps four and five.  The issue then becomes what the impact of this new evidence is, *i.e.*, what action should be taken

given my findings regarding this new evidence.  Plaintiff argues that the Commissioner

is bound by law to find, from Dr. Buchanan's findings, that Plaintiff's vision impairments

were severe and that they render her functionally blind except for four hours daily

subject to, with luck, another period of functional vision of an unspecified length of time

if Plaintiff has a two hour total vision rest period.  She further argues that this error

alone, standing apart from any of Defendant's other multiple errors, mandates vacation

of Defendant's decision and entry of an order that Defendant forthwith pay the claim.

   I agree with Plaintiff that this evidence may substantially impact the findings

made by the ALJ, commencing at step two.  I disagree, however, that this new evidence

requires an award of benefits without a remand.  This evidence has not been

considered on its merits and a remand is appropriate so that this evidence can be

assessed.  *See Chavez v. Barnhart*, No. 03-2298, 2005 WL 256532, at *3 (10th Cir.

Feb. 3, 2005); *Lawson*, 1996 WL 195124, at *2.  As explained by the Ninth Circuit,

where new medical evidence is presented only to the Appeals Council, the court can

consider this additional evidence in determining whether the Commissioner's denial of

benefits was supported by substantial evidence.  *Harman v. Apfel*, 211 F.3d 1172, 1180

(9th Cir. 2000).  However, "it is another matter to hold on the basis of evidence that the

ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter

of law.  *Id.*  The appropriate remedy is to remand.  *Id.*

   I also find, for purposes of remand, that the Commissioner must reweigh and

reconsider the reliance on the examining and nonexamining doctors.  First, I note that it

must be determined on remand to what extent these opinions can still be relied on in

light of Dr. Buchanan and Dr. Nix's supplemental reports.  Second, "[t]he opinion of an

examining physician or psychologist is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084.  An ALJ errs in rejecting a treating physician opinion in favor of a non-examining, consulting physician "absent a legally sufficient explanation for doing so." *Id*.

Dr. Ketelhohn was a non-examining source who reviewed Plaintiff's medical records and completed a Physical RFC Assessment.  (R. 190-97.)  As a nonexamining source, his opinions are entitled to the least weight of all, as discussed above.  Findings of a nontreating physician such as Dr. Ketelhohn "based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 50-8, 513 (10th Cir. 1987).   His opinion, provided in checked boxes, was dated March 1, 2005.  (R. 197.)  Plaintiff subsequently had more than two years of additional treatment which was not considered by Dr. Ketelhohn.  This must be taken into account in assessing what weight, if any, his opinion can be given.

Further, the opinions of an agency physician that did not examine the claimant cannot be relied on unless those opinions "themselves find adequate support in the medical evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004).  The ALJ did not explain what evidence in the record supported the findings of Dr. Ketelhohn.  Finally, the treating sources have now provided additional evidence which appears to directly contradict the findings of Dr. Ketelhohn.  This also must be considered on remand.

Dr. Kahler is an examining physician who saw Plaintiff once for an unspecified period of time.  His report is dated February 15, 2005, and thus also predates some two

plus years of additional treatment.  (R. 375-377.)  Further, Dr. Kahler expresses no

functional limitations whatsoever, *i.e.*, he fails to opine as to Plaintiff's ability to walk, sit,

stand, etc.  As to the "Mini-Mental Status Examination" which he performed, there is no

indication that he was qualified to make a mental diagnosis or assessment of Plaintiff.

His statements that Plaintiff left the office quite briskly, walked to her car without slowing

and was able to enter and sit in her car quickly appear to be mere observations, not

medical findings.  Finally, his actual medical diagnoses appear to bolster Plaintiff's

claims of pain, depression and other impairments.  All of this needs to be taken into

account on remand.

Dr. Wunder also was an examining source who stated an opinion as to Plaintiff's

functional limitations, other than vision.  (R. 737-45.)  Of interest, his findings actually

document the existence of Plaintiff's complaints of pain, depression and other

impairments.  (*Id.* 739.)  Further, the functional limitations he assessed only support a

finding of sedentary work, which was never discussed or reconciled by the ALJ with his

RFC finding Plaintiff could do light work.  Plaintiff also asserts that Dr. Wunder was not

provided with her medical records.  In addition, Dr. Wunder cautioned that his report

was based on incomplete information, stating: "It would be useful to repeat the

electrodiagnostic studies at this time to determine whether or not [Plaintiff's] peripheral

neuropathy has advanced."  (R. 379.)  The ALJ did not follow that recommendation;

thus, it seems doubtful the extent to which the ALJ can rely on Dr. Wunder's

assessment to support his findings.

In conclusion,  I find that the ALJ did not adequately weigh the medical evidence.

I further find that the new evidence provided to the Appeals Council was new, material

and chronologically relevant and that the Council erred in denying review.  Accordingly, I find that a remand to the Commissioner is appropriate to address these issues.

      2.     <u>Whether the ALJ Improperly Failed to Consider All of Plaintiff's Severe Impairments at Step Two and To Adequately Assess Plaintiff's RFC</u>

As stated previously, my remand based on the failure to weigh the medical evidence and the new, material evidence that must be considered obviously will require a new analysis of the claims beginning at step two.  This certainly must include an adequate assessment of Plaintiff's vision impairments and other impairments as found by Drs. Buchanan and Nix.  However, I note certain errors in connection with the ALJ's findings at step two and in connection with the RFC that also require a remand so that the issues can be addressed properly.

I first note that the ALJ erred in connection with his analysis of Plaintiff's mental impairments at step two and in Plaintiff's RFC.  Dr. Carbaugh, Psy.D., performed a pain psychological evaluation of Plaintiff at the request of Dr. Reichhardt, a physician who treated Plaintiff for a worker's compensation related injury.  Dr. Carbaugh found that Plaintiff had a "long-standing depressive order" and "long-standing personality issues." (R. 219.)  He also diagnosed Plaintiff with "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition", "Dysthymic Disorder" and "Probable Personality Disorder."  (*Id*. 220.)

Non-examining state agency physician, Dr. Glasco, also confirmed that Plaintiff had depression and other mental conditions and that she suffered from several moderate impairments in connection with her ability to work.  (R. 175, 86-87.)  This included the ability to interact appropriately with the general public.  (*Id.*)  The existence

of a moderate impairment is not the same as no impairment at all, and must be taken into account in connection with assessing the RFC. *Haga*, 482 F.3d at 1208.  Further, Dr. Glasco stated that Plaintiff could do work if she had up to six months to learn it. (*Id.* 188.)  This was also improperly ignored by the ALJ. *See Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (the ALJ erred in not including moderate and marked limitations identified by the state agency physicians in the RFC without an adequate explanation of why these limitations were not included) (citing *Haga*, 482 F.3d at 1208).[3]  The ALJ also failed to consider whether Plaintiff can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440 (quotation omitted).

Instead of making a decision based on the medical evidence, the ALJ based his decision on the testimony at the hearing of Nancy Winfrey, Ph.D., "an independent psychological medical expert", stating that he gave her opinions "substantial weight."[4] (R. 26.)  The ALJ stated that Dr. Winfrey examined the medical records and opined that Plaintiff did not have any work limitations in connection with her mental impairments. (*Id.*)  However, Dr. Winfrey was a nonexamining source.  As such, her opinions were entitled to the least amount of weight.  Further, her opinions cannot be relied on if they

---

[3]  "Mild" and "moderate" mental functional limitations do not appear in either the exertional definitions of the Social Security regulations or in the *Dictionary of Occupational Titles*.  On remand, these may need to be translated into appropriate terminology for the vocational expert.

[4]  It appears that the ALJ actually gave Dr. Winfrey's opinions controlling weight, but this is unclear.  As discussed previously, the ALJ must state the actual weight given to a medical source in a manner where the court can determine what weight was given.

were inconsistent with the examining and treating physicians.  In this case, as stated above, the medical providers who actually examined Plaintiff found functional limitations related to her mental impairments.  Also, Dr. Nix has now opined that Plaintiff has significant mental and physical functional limitations. (R. 767-69.)  Accordingly, I find that the ALJ's decision about Plaintiff's mental impairments in reliance on Dr. Winfrey is not supported by substantial evidence.

The  ALJ also found that Plaintiff did not undergo counseling for her mental impairments or did not otherwise obtain or comply with treatment.  (R. 26).  Those are not bases to reject medical evidence about Plaintiff' condition.  *See Robinson*, 366 F.3d at 1083 (an ALJ may not reject medical opinions "based on his own speculative opinion that claimant failed to comply with prescribed treatment, an improper basis to reject [a] treating physician's opinion"); *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not entitled to reject a treating doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals). Further, the ALJ failed to consider the fact that Plaintiff said she could not afford treatment.  (R. 795.)

The ALJ also did not conduct a proper pain analysis.  As noted above, Plaintiff was diagnosed with a Pain Disorder by Dr. Carbaugh.  (R. 220.)  In making this diagnosis, Dr. Carbaugh stated:

> Note that [Plaintiff's] pain report appears to be reasonably reliable from a psychometric standpoint.... In sum, it does not appear that [Plaintiff] is magnifying her symptoms per se. However, her chronic and pre-existing depression is likely to be negatively impacting her pain perception and response to treatment.

R. 219.)  That pain arising via such a disorder itself might be disabling is beyond

debate.  *See Turner v. Heckler*, 754 F.2d 326 (10th Cir. 1985).  Further, the fact that

Plaintiff's pain disorder has psychological components as well as physical components

does not provide a basis to reject the pain disorder when the treating source has made

medical findings that support those findings.  *See Teter v. Heckler*, 775 F.2d 1104 (10th

Cir. 1985); *Turner*, 754 F.2d at 330 ("the law is clear that subjective pain need not be

shown to have an objective physical origin to be disabling").

 The providers who saw Plaintiff or reviewed her medical records almost uniformly

concluded that she suffered from pain.  Further, Plaintiff took very strong pain

medication, including Vicodin and Oxycodon which she stated made her drowsy and

slower to comprehend things.  (R. 795-96.)  Yet the ALJ ignored that evidence, chose

not to include pain in the RFC, and appeared to do a mere boilerplate analysis of the

pain issue.  This was error.  As noted by the Tenth Circuit in *Carpenter v. Chater*, 537

F.3d 1264, 1268 (10th Cir. 2008), "[t]he ALJ's purported pain analysis is improper

boilerplate because he merely recited the factors he was supposed to address and did

not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated

attempts to find relief from pain, and all the drugs she has been prescribed for pain,

resulting in a conclusion that she is unlimited in any regard by pain or the side effects

from her pain medication".  The pain also clearly appeared to impact Plaintiff's physical

RFC, as found by Dr. Nix in his supplemental report.  This needs to be properly

considered on remand.

 The ALJ also apparently used Plaintiff's testimony as a basis to find the alleged

severity of her impairments and pain not to be credible.  The points raised were that

Plaintiff testified, among other things, that she occasionally walks her dog, does a few

household chores, went to Bingo in the past, and now and then watches her grandchildren.  The ALJ appeared to selectively pick from the record and found Plaintiff's activities to be much more extensive than the testimony supported.  For example, he stated that he found no limitations on the ability to do house work (R. 27), even though Plaintiff stated that she could only do this for limited periods.  (*Id.* 142.)  Further, he found that she could do certain activities such as laundry (*id.* 30) which she said she had often her daughter assist with.  (*Id.* 801).  The ALJ may not "'pick and choose among [evidence], using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter*, 537 F.3d at 1265 (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

Also, the ability to do chores or other activities on a sporadic basis does "not establish that a person is capable of engaging in substantial gainful activity."  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citing *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983)).  Similarly, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain."  *Thompson*, 987 F.2d at 1490 (citing *Frey*, 816 F.2d at 516); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("limited activities in themselves do not establish that one can engage in light or sedentary work").  In this case, the record is devoid of evidence of Plaintiff doing or having any ability to do such activities with any regularity, to any sort of a schedule, for eight hours a day for a full year, at work speed and quality.  This is yet another error which requires that this case be remanded.

The ALJ also stated that the record demonstrates that Plaintiff's impairments were present at approximately the same severity prior to Plaintiff's alleged onset date,

"and the fact that these impairments did not prevent the claimant from working [previously] strongly suggests that they would not currently prevent work." (R. 31.) However, the ALJ emphasized Plaintiff's stated reasons for leaving her final cashiering job, which she left in 1991.  Why she left cashiering in 1991 appears to be irrelevant to whether she was disabled in 2004.

Finally, the ALJ is required by law to consider all of a person's impairments.  If a favorable decision cannot be reached on consideration of just the person's physical impairments or mental impairments, then the ALJ is required to carefully consider the person's combination of physical and mental impairments, including impairments found not to be severe.  20 C.F.R. § 404.1523.  This rule of law does not appear to have been applied here.  The ALJ limited his evaluation only to Plaintiff's "...history of degenerative disc disease, diabetes, and obesity".  (R. 26).

The  impairments must be considered in combination even at step two.  The ALJ applies the wrong standard when he considers only a claimant's impairments individually to determine whether they are sufficiently severe to limit her ability to do basic work activities.  *Carpenter*, 537 F.3d at 1266.  "'At step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'"  *Id.* at 1123-24 (quoting 20 C.F.R. § 404.1523) (internal quotation marks omitted).  Again, this does not appear to have been done in this case.  Finally, on remand the Commissioner should also keep in mind at step two that "a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."  *Langley*, 373 F.3d at 1123.

3.      <u>Whether the ALJ Improperly Denied the Claim at Step Four</u>

In light of my findings, and especially the new evidence that must be assessed, the step four analysis is not currently supported by substantial evidence and will have to be reassessed.  I also find other errors with the ALJ's step four analysis.  The basis for the finding that Plaintiff could perform her past relevant work was the vocational's expert testimony that Plaintiff could return to her past relevant work as a retail store manager. (R. 818.)  However, as Plaintiff correctly points out, past work is not relevant unless done within the past 15 years in such a fashion that such work is still relevant.  A gradual change occurs in most jobs so after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply.  20 C.F.R. § 404.1565(a).  The VE testified that Plaintiff's past work, other than as a cook, had "dramatically changed."  (R. 820.)  There was no evidence that Plaintiff has the skills currently required for these jobs, such as being computer literate.  (*Id.* 821.)  Further, the cashiering job requires interaction with the public which was not adequately explored.  (R. 822.)

Third, Plaintiff was earning $6.50 per hour as a "manager."  (R. 129.)  Plaintiff points out, and Defendant does not dispute, that managers normally do not get paid by the hour and when they do, it is not at such a low wage.  While Plaintiff's title may have been  "manager," Plaintiff asserts that her work was actual minimal wage, unskilled work.  Indeed, Plaintiff asserts that the vocational expert improperly classified the work as "retail store manager."  A "Manager, Retail Store" requires at least two and up to our years of vocational training (SVP of 7), skills in algebra, etc.  (*Dictionary of Occupational Titles*, 4th Ed., pages 135, 1009-1010.)  There is no evidence in the record that Plaintiff

has these skills.  Plaintiff contends that the proper vocational designation per the DOT is

Cashier, Self-Service Gasoline, *Dot* 211.462.010, an unskilled job.  (*Id.*, note 141, page

183).  Defendant has not countered that contention.

Fourth, as performed, Plaintiff was required to lift 50 pounds at least

occasionally.  (R. 129.)  The first hypothetical person described by the ALJ was limited

to "light work," which by definition is limited to lifting a maximum of 20 pounds.  Thus,

the first hypothetical person was physically incapable of returning to the work previously

done by Plaintiff as a "manager".  The ALJ's second hypothetical person was even more

restricted, to "sedentary work," which by definition has a lifting maximum of 10 pounds.

Finally, the uncontroverted evidence is that Plaintiff's last job was in a hospital

kitchen, classified by the Commissioner as a "Short Order Cook, DOT 313.374-014.

That job requires, *inter alia*, the ability to perform the full range of light work.  (*Dictionary

of Occupational Titles,* 4th ed., page 243.)  The uncontroverted evidence also was that

Plaintiff held that job from 1993-2004 and that she was fired from the job due to her

physical inability to perform that work, i.e., she lacked the physical RFC to perform light

work to the satisfaction of a real employer in the real world of work.  These issues need

to be properly considered on remand.

### 4.    Whether the ALJ Met His Burden of Proof at Step Five

In light of my findings, and especially the new evidence that must be assessed,

the step five analysis must also be reassessed.

### IV.    CONCLUSION

Based upon the errors described above, I find that this case must be reversed

and remanded to the Commissioner for further fact finding and analysis.  It is therefor

-23-

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 30, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge